**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **MICHELE L.,** [1] | **)** | |
| | **)** | |
| **Plaintiff,** | **)** | |
| | **)** | |
| **v.** | **)** | **Civil Action No. 7:20-CV-388** |
| | **)** | |
| **KILOLO KIJAKAZI,** [2] **Acting** | **)** | |
| **Commissioner of Social Security,** | **)** | |
| | **)** | |
| **Defendant.** | **)** | |

## REPORT AND RECOMMENDATION

Plaintiff Michele L. ("Michele") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for Disability Insurance Benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433, 1381-1383f. Michele alleges that the Administrative Law Judge ("ALJ") erred by failing to properly account for her moderate impairments in concentration, persistence, or pace and social interaction; by failing to provide a function-by-function analysis of her physical impairments; and by improperly assessing her subjective allegations. I conclude that the ALJ's decision is supported by substantial evidence. Accordingly, I **RECOMMEND DENYING** Michele's Motion for Summary Judgment (Dkt. 15) and **GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. 19).

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is hereby substituted for Andrew Saul as the defendant in this case.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Michele failed to demonstrate that she was disabled under the Act.[3] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This standard of review requires the Court to "look[] to an existing administrative record and ask[] whether it contains 'sufficien[t] evidence' to support the [ALJ's] factual determinations." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). "The threshold for such evidentiary sufficiency is not high," Biestek, 139 S. Ct. at 1154, and the final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Michele filed an application for SSI and DIB on June 1, 2017, alleging disability beginning on June 30, 2016. R. 16. The state agency denied Michele's applications at the initial and reconsideration levels of administrative review. R. 87–150. On May 21, 2019, ALJ Geraldine Page held a hearing to consider Michele's applications. R. 38–72. Michele was represented by counsel at the hearing, at which vocational expert Mark Hileman testified. Id. On

---

[3] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

June 11, 2019, the ALJ entered her decision analyzing Michele's claim under the familiar five-step process[4] and denying her claim for benefits. R. 16–31.

The ALJ found that Michele suffered from the severe impairments of hepatitis C; lumbar degenerative disc disease and sciatica; cervical degenerative disc disease; opiate addiction; depression; anxiety; post-traumatic stress disorder; and borderline personality disorder. R. 18–19. The ALJ determined that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. R. 20–22.

The ALJ concluded that Michele retained the residual functional capacity ("RFC") to perform a range of light work. R. 22. Specifically, the ALJ found that Michele can occasionally climb ramps and stairs, balance, kneel, stoop and crouch; never crawl; frequently reach overhead; must avoid concentrated exposure to extreme temperatures; and must avoid all exposures to hazardous machinery, working at unprotected heights, climbing ladders, ropes or scaffolds, and work on vibrating surfaces. R. 22. The ALJ also found that Michele is able to understand, remember, and carry out simple instructions in repetitive, unskilled work; attend, persist and concentrate for two-hour segments with normal breaks as allowed by the employer; able to complete a normal eight-hour day/40 hour week in work that involves no interactions with the general public and occasional interactions with coworkers and supervisors; and is able to respond appropriately to supervision, coworkers and usual work situations. Id.

---

[4] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curium) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

The ALJ determined that Michele is unable to perform her past relevant work as an office manager and tanning salon attendant; but that she can perform other jobs that exist in the national economy, such as mail room clerk, clothing bagger and router. R. 29–30. Thus, the ALJ concluded that Michele was not disabled. R. 30.  Michele appealed the ALJ's decision and on May 26, 2020, the Appeals Council denied her request for review. R. 1–4. This appeal followed.

## ANALYSIS

### Mental Impairments

Michele argues that the ALJ failed to explain how she determined that Michele could work for two-hour intervals with normal breaks and sustain work over an eight-hour workday. Pl. Br. Summ. J. p. 19. Michele also asserts that a restriction to occasional interaction with others is insufficient to address her moderate limitation with social interaction. Pl. Br. Summ. J. p. 23. I find that substantial evidence supports the ALJ's conclusion that Michele's mental health impairments are properly accommodated by the RFC. As set forth in detail below, there are no specific limitations required to accommodate moderate impairments with interacting with others and concentration, persistence or maintaining pace; rather, the law requires that the ALJ explain how the limitations in Michele's RFC accommodate her moderate mental health impairments. Here, the ALJ's explanation creates the necessary logical bridge and is supported by substantial evidence.

SSR 96-8P[5] requires the ALJ to include a narrative discussion describing how the evidence supports her conclusions when developing the RFC. 1996 WL 374184 (S.S.A. July 2,

---

[5]  Social Security Rulings are "final opinions and orders and statements of policy and interpretations" that the Social Security Administration has adopted. 20 C.F.R. § 402.35(b)(1).  Once published, these rulings are binding on all components of the Social Security Administration. Heckler v. Edwards, 465 U.S. 870, 873 n.3 (1984); 20 C.F.R. § 402.35(b)(1). "While they do not have the force of law, they are entitled to deference unless they are clearly erroneous or inconsistent with the law." Pass v. Chater, 65 F.3d 1200, 1204 n.3 (4th Cir. 1995).

1996); Teague v. Astrue, No. 1:10-cv-2767, 2011 WL 7446754, at *8 (D.S.C. Dec. 5, 2011). The

ALJ "must include a narrative discussion describing how the evidence supports each conclusion,

citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily

activities, observations)." SSR 96-8P at *7; Meadows v. Astrue, No. 5:11-cv-63, 2012 WL

3542536, at *8 (W.D. Va. Aug. 15, 2012) (citing Davis v. Astrue, No. 9-cv-2545, 2010 WL

5237850, at *5 (D. Md. Dec. 15, 2010)); Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016)

(emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his

conclusion" and holding that remand was appropriate when the ALJ failed to make "specific

findings" about whether the claimant's limitations would cause him to experience his claimed

symptoms during work and if so, how often).

    In Mascio v. Colvin, the Fourth Circuit held that an ALJ does not generally account for a

claimant's limitations in concentration, persistence, and pace by restricting the claimant to

simple, routine tasks or unskilled work. The court noted, "the ability to perform simple tasks

differs from the ability to stay on task. Only the latter limitation would account for a claimant's

limitation in concentration, persistence, or pace." Id. at 638.  The court noted, however, that the

ALJ may find that the concentration, persistence or pace limitation would not affect a claimant's

ability to work, in which case it would have been appropriate to exclude it from the hypothetical

tendered to the vocational expert. 780 F.3d at 638. The court found error in Mascio because the

ALJ did not explain why Mascio's moderate limitation in concentration, persistence, or pace did

not translate into a limitation in his RFC.

    The Mascio decision does not broadly dictate that a claimant's moderate impairment in

concentration, persistence, or pace must always translate into a limitation in the RFC. Rather,

Mascio underscores the ALJ's duty of explanation to adequately review the evidence and explain

the disability decision, especially where, as the ALJ held in <u>Mascio</u>, a claimant's concentration, persistence or pace limitation does not affect the claimant's ability to perform simple, unskilled work. Indeed, in <u>Shinaberry v. Saul</u>, No. 18-2096, 2020 WL 908887, at *4 (4th Cir. Feb. 26, 2020), the court emphasized that <u>Mascio</u> "did not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC. On the contrary, we explained that an 'ALJ can explain why [a claimant's] moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation' in the claimant's RFC." <u>Id.</u> (quoting <u>Mascio v. Colvin</u>, 780 F.3d 632, 638 (4th Cir. 2015)). The Fourth Circuit noted that "limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations [in concentration, persistence, or pace]" when the "medical evidence demonstrates that a claimant can engage in simple, routine tasks, or unskilled work, despite [these] limitations." <u>Id.</u> (quoting <u>Winschel v. Comm'r of Soc. Sec.</u>, 631 F.3d 1176, 1180 (11th Cir. 2011)). The ALJ has the responsibility to address the evidence of record that supports that conclusion and ensure that the hypothetical presented to the vocational expert includes all the limitations set forth in the RFC.

Here, substantial evidence supports the ALJ's decision that despite Michele's moderate limitation with concentrating, persisting or maintaining pace, she can perform repetitive, unskilled work with simple instructions; can attend, persist and concentrate for two-hour segments with normal breaks; and can complete a normal eight hour day. R. 22.

Michele suffers from depression, anxiety and panic attacks. Michele has a history of narcotic drug use and reported using IV drugs and obtaining methadone and Suboxone without a prescription during the alleged period of disability. R. 397, 400, 512, 515, 731.  Michele also took more than her prescribed dose of Xanax. R. 740, 760. Michele completed high school and

lives in an apartment with a friend. R. 42, 50. She worked part-time in 2016 and 2017 as an office manager and at a tanning salon. R. 45.  Michele did not receive mental health treatment during the relevant period, despite recommendations to do so from her treating physicians. R. 514, 534, 593,  Michele consistently reported symptoms of intermittent depression and anxiety to her family doctor. R. 565, 593, 723, 816, 830, 901.

In step three of the decision, the ALJ determined that Michele had a mild limitation with understanding, remembering and applying information; and moderate limitations with interacting with others; adapting or managing oneself; and concentration, persistence or maintaining pace. R. 20–21.  Regarding concentration, persistence or maintaining pace, the ALJ noted:

> The claimant has anxiety and depression issues.  She reported taking extra Xanax for panic issues, but she did not generally complain of panic issues.  The record does not show visits to mental health providers, despite referrals and encouragement from providers, indicating her mental issues were not bothering her greatly. The consultative examiner did not note concentration, persistence, or pace problems with simple work.  The records do not indicate intense issues such as hallucinations, delusions, or suicidal ideation.

R. 21.

In step four of the decision, the ALJ noted Michele's testimony that she cannot concentrate as she used to, she would lose her train of thought when people came in to her tanning salon job, and she had trouble concentrating as an officer manager. R. 22–23.  The ALJ noted that Michele testified that she has bad anxiety and different personalities, her mind will go "different ways," and she does not like being around people due to nervousness. R. 23.

The ALJ reviewed Michele's medical records in detail.  Regarding her mental health treatment, the ALJ noted that Michele was treated for depression. In March 2016, Michele's family doctor decided to take her off narcotic medication. R. 528. Michele responded that she would not go without Xanax and would just find what she needs on the street. R. 23, 528.  In

April 2016, Michele sought treatment for her hepatitis C infection and reported taking non-prescription methadone and working part-time in a sun tanning facility. R. 24, 523. In May 2016, Michele requested a prescription for Xanax three times a day due to stress working part-time with the public. R. 24, R. 406. Michele's request was denied. Id. Michele reported using IV drugs in May 2016, and non-prescribed Suboxone in September 2016. R. 24, 403, 512. Michele was advised to seek psychiatric help for her depression and bipolar disorder. R. 514. Michele complained of intermittent depression and mild anxiety. R. 515.

In December 2016, Michele's hepatitis C provider listed uncontrolled depression as one of Michele's problems. R. 24, 503. In August 2017, Michele reported feelings of mania to her primary care provider and noted that she had been on Suboxone for a while. R. 721. Michele reported increased stress and anxiety related to her abusive ex-husband. She took Xanax for panic attacks. R. 24, 721. Michele's treating provider recommended follow up with psychiatry and noted that she can take a third Xanax on days where she has panic attacks but should not do so on a regular basis. R. 723.

On September 11, 2017, Michele underwent a consultative examination by Marvin Gardner, Ph.D. R. 730. Michele reported grocery shopping late at night to avoid people; not seeing a counselor; buying oxycodone off the street as needed; and having PTSD from a violent episode with her husband. Michele reported good relationships with her supervisors and coworkers in the past, and that she was usually let go because of her attendance. R. 732. She was previously arrested for domestic assault and opioid possession. Michele reported low energy, fatigue, poor concentration and feelings of guilt/worthlessness. She suffered from depression since childhood and has panic attacks when around a lot of people. R. 733.

Upon examination, Michele had moderately impaired immediate recall, mildly impaired long-term memory and normal recent memory. Michele had no impairment with concentration, persistence or pace with attempting simple and repetitive tasks. R. 734. Dr. Gardner noted that Michele had moderate depression and anxiety and might be affected by her opioid use. Id. Dr. Gardner found that Michele could perform simple repetitive work and maintain regular attendance. R. 735. He determined that Michele can perform work activities on a consistent basis, without special supervision. Id. Dr. Gardner found that Michele could complete a normal workday or workweek without interruptions from her psychiatric condition. He also determined that Michele would have no more than a moderate impairment with social interaction with supervisors and she could interact with a small number of coworkers. Dr. Gardner found that Michele should not interact with the general public due to her anxiety but could deal with the usual stresses of work when she was abstinent from substances. Id.

In August 2018, Michele sought treatment with her primary care provider and reported worsening mental health issues after her mother died in 2011 and her son left in 2012. R. 26, 814. She reported feeling sad and lonely. Id. The provider found that Michele's depression and anxiety were uncontrolled, recommended mental health treatment and prescribed Cymbalta. R. 817. In January 2019, Michele reported a slight improvement in her symptoms with Cymbalta and Flexeril, and that she did not seek mental health treatment because she does not have insurance. R. 27, 828–31.

In her analysis, the ALJ specifically set forth each mental health limitation in the record and identified how it was accommodated in the RFC. The ALJ noted that Michele complained of mania at times, but the record does not show particular reports of manic episodes. R. 28. The ALJ noted that Michele reported quick changes in personality, and she did shift from a euthymic

mood to anxiety during her consultative examination. Id. "However, providers did not generally note difficulty interacting with her, and the record does not show behavior problems." R. 28. The ALJ concluded that a limitation of occasional interaction with co-workers and no interaction with the general public accommodates Michele's mood issues. Id.

The ALJ also noted that Michele reported anxiety with large groups of people in open areas, and the RFC limitation to no public interaction accommodates this issue. Id. The ALJ found that Michele's depression did not result in suicidal ideation or much crying, that the record did not indicate intense withdrawal issues, that her depression was partly related to loss of her mother and her son leaving home; thus, work should not worsen her depression.  The ALJ noted that the RFC accommodates Michele's increased anxiety working with the public. R. 28.

Regarding concentration, the ALJ noted that Michele reported problems, but the record does not generally show complaints or findings of concentration difficulties. Michele did not generally seek counseling, even when a treatment provider recommended that she see a mental health provider.  The ALJ found that this indicated that Michele's mental issues were not intense. The ALJ reviewed Dr. Gardner's finding that Michele had difficulty with abstract thinking, but noted that the record does not indicate that Michele would have difficulty with simple work; concluding, "the limitations of simple work with social interaction limitations accommodate her difficulty in managing herself as well as her concentration issues." R. 28.

The ALJ reviewed the state agency opinions in the record related to Michele's mental health.  On September 21, 2017, state agency psychologist Julie Jennings, Ph.D., reviewed Michele's records and determined that she has moderate limitations with detailed instructions, performing activities within a schedule, maintaining regular attendance and being punctual, working in coordination with or proximity to others without being distracted by them, and with

the ability to complete a normal workday or workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace. R. 97.  Dr. Jennings also determined that Michele is moderately limited in her ability to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors; to get along with coworkers or peers; and to set realistic goals or make plans independently. R. 97–98.  Dr. Jennings determined that, with abstinence from opioids, Michele was capable of simple, unskilled, non-stressful work with occasional interaction with coworkers and supervisors in a well-spaced location requiring only minimal contact with others. R. 98.

On March 6, 2018, state agency psychologist Howard Leizer, Ph.D., reviewed Michele's records on reconsideration and agreed that despite her moderate limitations, Michele could perform simple, unskilled, non-stressful work with occasional interaction with co-workers and supervisors in a well-spaced location requiring only minimal contact with others. R. 130. The ALJ found these opinions persuasive, noting, "[t]he evidence indicates that simple work with the social interaction limitations would not be overly stressful for the claimant.  Overall, these opinions are persuasive." R. 28.

The ALJ also found Dr. Gardner's limitations persuasive and noted that they were similar to the RFC. R. 28.  Thus, the ALJ limited Michele to unskilled, repetitive work with simple instructions; to attend persist and concentrate for two-hour segments with normal breaks as allowed by the employer; to work with no interactions with the general public; and occasional interactions with co-workers and supervisors. R. 22.

The ALJ's finding that Michele can perform work with the limitations set forth in the RFC despite her moderate impairments with concentration, persistence or maintaining pace and social interaction is supported by Michele's treatment records and by the opinions of the

consultative and reviewing physicians in the record. Indeed, the ALJ found all the mental health

physician opinions persuasive, and imposed limitations consistent with their opinions.

Michele asserts that the ALJ did not explain how she determined that Michele could work

for two-hour intervals with normal breaks and failed to specifically address her ability to sustain

work over an eight-hour workday. Pl. Br. Summ. J. pp. 19, 21.  Michele asserts that Dr.

Gardner's conclusion that she could perform work activities on a *consistent* basis is different

from the ability to perform tasks on a sustained basis for an 8-hour workday. However, here Dr.

Gardner also concluded that Michele could complete a normal workday or workweek without

interruptions resulting from her psychiatric condition. R. 735.  Thus, Dr. Gardner explicitly

determined that Michele could not only perform simple and repetitive work tasks on a consistent

basis, but that she could do so for a normal workday or workweek without interruptions. The

ALJ found Dr. Gardner's opinion persuasive, and noted that Michele complained of

concentration problems, but the record did not generally show complaints or findings of

concentration difficulties. R. 28. The ALJ further noted that the record did not indicate that

Michele would have difficulty with simple work, as indicated by Dr. Gardner, and thus,

limitations of simple work with limited social interactions accommodate her difficulty in

managing herself as well as her concentration issues. Id.  Michele does not point to any evidence

in the record that the ALJ failed to consider indicating that she would have difficulty sustaining

work.

Michele also asserts that a limitation to occasional interaction with others is insufficient

to address her moderate impairment interacting with others. Pl. Br. Summ. J. p. 23.  Michele

notes her previous arrest for domestic assault, and Dr. Gardner's opinion that she can only

interact with a small number of co-workers. Id.  The ALJ recognized that Michele reported anger

issues, and that she grocery shops at night to avoid people. R. 21.  The ALJ also noted Michele's

reports in the record of getting along well with her past co-workers and supervisors (R. 732), that

she lives with a friend and visits friends, and her treatment providers did not have difficulty

interacting with her. R. 21. Drs. Jennings and Leizer determined that Michele could perform

work with occasional interaction with coworkers and supervisors in a well-spaced location

requiring only minimal contact with others. R. 98, 130.  Dr. Gardner found that Michele could

accept instructions from and interact with supervisors, can interact with a small number of

coworkers, and in not able to interact with the general public. R. 735.  The ALJ found all the

opinions persuasive and noted that "[t]he limitation of occasional interaction with co-workers

and no interaction with the public accommodates her mood issues." R. 28.

Thus, unlike in Mascio, the court here is not left to guess at the ALJ's decision-making

process. The ALJ relied upon Michele's testimony, her treatment records, and the opinions of the

reviewing and consulting physicians to find that despite Michele's moderate mental health

impairments, she could perform a limited RFC. The ALJ reviewed Michele's record evidence in

detail, and then explained how the RFC accommodated each of Michele's mental health

limitations in the analysis.

### Physical Impairments

Michele asserts that the ALJ erred by finding that her fibromyalgia is not a medically

determinable impairment, and by failing to provide exertional and postural limitations to

appropriately accommodate her sciatica. Pl. Br. Summ. J. p. 24.  Michele also asserts that the

ALJ did not determine how her physical impairments affect her ability to work on a function-by-

function basis, and failed to make specific findings regarding whether her impairments would

cause her to take extra breaks and lie down during the day. Pl. Br. Summ. J. p. 25.

Michele testified that she has pain in her middle and low back daily. R. 56, 57. Michele reported that she left her last job due to back pain and can sit for 15 minutes and stand for 10 minutes. R. 48–49.  Michele also testified that she has been diagnosed with fibromyalgia which causes diffuse muscle pain and fatigue. R. 57–58.

In September 2015, Michele went to the emergency room for severe neck and back pain that she has been suffering "off and on" for years. R. 537.  Michele was diagnosed with bilateral back pain without sciatica and advised to follow up with her primary care physician. R. 539. Michele was diagnosed with hepatitis C in April 2016. R. 522.  Michele visited her primary care provider sporadically for complaints of low back and shoulder pain from March 2016 through April 2019.  R. 539, 723, 794, 814, 828, 899.  Michele was diagnosed with fibromyalgia, arthritis, and low back pain without sciatica. Michele's physical examinations were normal, aside from pain and tenderness in her low back and shoulders. R. 723, 797, 816, 829, 901.  An MRI of Michele's cervical spine taken in August 2017 reflected mild multi-level spondylotic/discogenic changes without significant canalicular or foraminal compromise. R. 724–25. A previous MRI taken of Michele's lumbar spine in 2014 reflected a central disc protrusion and annulus tear at L4-5. R. 815.

Michele fractured her right ankle in December 2017, was placed in a walking boot, and referred for physical therapy. R. 757, 749, 787. Michele was diagnosed with chronic lower back pain without sciatica and cervical disc disease in August 2018, and prescribed pain medication and muscle relaxers. R. 814–17.  In January 2019, Michele complained of pain in her back and shoulders, with some neuropathic pain in her lower extremities. R. 828. Her muscle strength was intact in all extremities. R. 830.  In April 2019, Michele visited her family doctor, for constipation and difficulty sleeping. She reported no longer taking Cymbalta.  Upon

14

examination, Michele had full muscle strength in her upper and lower extremities. R. 901. Her

doctor noted that Michele's "depression, anxiety and fibromyalgia are uncontrolled. She reports

multiple side effects to previous therapies, but does not recall. Will trial Celexa. Continue other

meds as prescribed." R. 902.

On October 2, 2017, state agency physician William Rutherford, Jr., M.D., reviewed

Michele's records and determined that she can perform light work, with frequent stooping or

crouching. R. 95–96. On March 6, 2018, state agency physician Richard Surrusco, M.D.,

reviewed Michele's records and agreed with Dr. Rutherford's conclusion that she can perform

light work with postural limitations. R. 127–28.

The ALJ reviewed Michele's treatment records and the physician opinions and noted that

despite having an annulus tear at L4/5, Michele's examination findings during the period were

either normal or showed mild tenderness. R. 27. The ALJ noted that Michele did not have

reduced strength in her lower extremities, and her providers did not recommend a spine

specialist. The ALJ also noted that Michele complained of pain to her treating providers but did

not complain of "great limitations" in walking, standing or sitting. Id. Michele also did not list

back pain as an issue in her initial disability report. R. 27, 288. Regarding Michele's upper back,

the ALJ noted that her MRI showed mild degeneration in her neck, and her upper extremities

were normal on examinations. R. 27. The ALJ found that Michele "had reduced ability to

lift/carry due to her spinal issues, but the evidence does not indicate great ambulation issues, and

she could perform at the light level." Id. The ALJ also found that a restriction to light work

accommodates Michele's hepatitis C. Id. The ALJ determined that the opinions of Drs.

Rutherford and Surrusco limiting Michele to light work were persuasive. R. 27. Thus, the ALJ

determined that Michele could perform light work with occasional climbing ramps and stairs,

balancing, kneeling, stooping, and crouching; never crawling; frequently reaching overhead; and

must avoid concentrated exposure to extreme temperatures, all exposure to hazardous machinery,

working at unprotected heights, climbing ladders, ropes or scaffolds, and work on vibrating

surfaces. R. 22.

Michele asserts that the ALJ did not perform a function-by-function analysis and address

whether she would need extra breaks during the day.  A function-by-function analysis requires

the ALJ to develop an adequate RFC that accounts for the work activities the claimant can

perform given the physical or mental impairments affecting her ability to work. Importantly, the

ALJ must explain the conclusions reached and explain any record evidence which contradicts the

RFC determination. See SSR 96-8P, 1996 WL 374184 (S.S.A. July 2, 1996). The ALJ is

instructed to cite specific medical facts and non-medical evidence supporting her conclusion,

discuss the individual's ability to perform sustained work activities in an ordinary work setting

on a regular and continuing basis, describe the maximum amount of each work-related activity

the individual can perform, and explain how any material inconsistencies or ambiguities in the

evidence were considered and resolved. SSR 96-8P, 1996 WL 374184, at *7.

 In Mascio v. Colvin, the court rejected a "per se rule requiring remand when the ALJ

does not perform an explicit function-by-function analysis," agreeing instead with the Second

Circuit that "'[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity

to perform relevant functions, despite contradictory evidence in the record, or where other

inadequacies in the ALJ's analysis frustrate meaningful review.'" Mascio, 780 F.3d at 636

(citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). "The Mascio Court held remand

was necessary, in part, because the ALJ failed to indicate the weight given to two residual

functional capacity assessments which contained relevant conflicting evidence regarding the

claimant's weight lifting abilities." Newcomb v. Colvin, No. 2:14–CV–76, 2015 WL 1954541, at

*3 (N.D. W. Va. Apr. 29, 2015).

Here, the ALJ performed the required function-by-function analysis. Michele's alleged

need for additional breaks during the day is a subjective assertion that is not referenced in her

treatment records or recommended by any of the treating, consultative or reviewing physician

opinions in the record.  The ALJ reviewed Michele's records and testimony in detail, provided a

detailed and extensive RFC, and gave a logical analysis explaining how the RFC accommodates

Michele's physical limitations.  The ALJ acknowledged that Michele's back pain and

fibromyalgia limit her ability to stand, walk and sit, but found that she was able to perform light

work with postural and environmental limitations. The ALJ found persuasive the opinions of the

state agency physicians that Michele could perform light work with postural limitations;

however, the ALJ determined that additional postural and environmental limitations are

warranted. R. 22.  Thus, the ALJ imposed physical limitations more restrictive than any

recommended by the reviewing physicians.

The ALJ is not required to make specific findings related to Michele's subjective

assertions that she requires breaks due to pain. See Shinaberry, 2020 WL 908887, at *6 (ALJ did

not err in refusing to fully credit claimant's subjective statements regarding her physical

limitations where claimant pointed to no medical evidence in support of a limitation.). The ALJ

created a narrative discussion that builds an accurate and logical bridge from the evidence to her

conclusion, through her discussion of the medical and non-medical evidence, Michele's alleged

symptoms, and the medical opinions of record. This narrative discussion allows this court to see

how the evidence in the record—both medical and nonmedical—supports the ALJ's RFC

determination.  Because I was not "left to guess" at how the ALJ reached her RFC determination, I find that the ALJ's conclusion is supported by substantial evidence. Mascio, 780 F.3d at 637.

Michele alleges that the ALJ erred by finding that her fibromyalgia is not a medically determinable impairment. Pl. Br. Summ. J. p. 24.  In support, Michele points to the notes by her hepatitis C provider that her fibromyalgia was "uncontrolled." R. 830–31. In step two of the opinion, the ALJ stated,

> The record does not establish the claimant's fibromyalgia is a medically determinable impairment pursuant to SSR 12-2p.  The record does not show an examination with findings of eleven tender points.  It does not show repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions.  The record shows chronic depression and some pain complaints, but others [sic] issues such as headaches are not repeated.
>
> In addition, the claimant's fibromyalgia is accommodated by the light exertional level.  The claimant testified her fibromyalgia would cause inability to get off the couch.  She did not complain of fibromyalgia much in 2016, but she reported increased fibromyalgia symptoms in mid-2017.  She reported constant aching in August 2018, and her provider stated her fibromyalgia was uncontrolled.  However, she did not complain much of her fibromyalgia in 2019, and the record does not indicate intense pain generally.  In addition, she did not generally complain of intense fatigue, or complain of being unable to get up at home.

R. 19.

SSR 12-2p provides guidance on how the SSA determines that a person has a medically determinable impairment of fibromyalgia. SSR 12-2p, 2012 WL 3104869 (July 25, 2012).  According to SSR 12-2p, a claimant can show a medically determinable impairment of fibromyalgia by demonstrating: (1) a diagnosis from an acceptable medical source and (2) evidence from that source that satisfies either the 1990 American College of Rheumatology Preliminary Diagnostic Criteria for fibromyalgia (the "1990 Criteria") or the 2010 American College of Rheumatology Preliminary Diagnostic Criteria for fibromyalgia (the "2010 Criteria").  Id.  The 1990 criteria require: 1) a history of widespread pain; 2) at least 11 positive tender

points on physical examination; and 3) evidence that other disorders that could cause these symptoms or signs were excluded. Id.  The 2010 criteria require: (1) a history of widespread pain; (2) repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems, waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and (3) evidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded. See SSR 12-2p, 2012 WL 3104869, at *2-3.

The ALJ considered both sets of criteria when evaluating Michele's fibromyalgia, noting that the record does not show an examination with findings of eleven tender points, and does not show repeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions.  The ALJ noted that Michele had chronic depression and some pain complaints, but other issues, such as headaches, are not repeated. The ALJ acknowledged the treatment note finding Michele's fibromyalgia "uncontrolled," but also noted that Michele's complaints of fibromyalgia were inconsistent over time and she did not generally allege intense pain or fatigue. R. 19. Despite determining that Michele's fibromyalgia was not a medically determinable impairment, the ALJ also found that any limitations arising from her fibromyalgia were accommodated by the RFC limiting Michele to a range of light work with postural and environmental limitations. R. 19.  Thus, substantial evidence supports the ALJ's conclusion that Michele's fibromyalgia is accommodated by the RFC.

**Subjective Allegations**

Michele asserts that the ALJ failed to properly assess her subjective allegations regarding her back pain, fibromyalgia pain and fatigue, and allegations of mania. Pl. Br. Summ. J. pp. 27–28.  In support, Michele cites to evidence in the record, including the MRI showing an annulus

tear at L4-5, her reports of back pain to treatment providers, and findings in the record that her anxiety and depression were "uncontrolled." Pl. Br. Summ. J. pp. 27–28.

Michele's argument in this section of her brief restates her arguments related to the ALJ's mental and physical RFC findings and function by function analysis, already addressed above. Michele does not identify any subjective complaints or treatment records that the ALJ failed to consider. Nor does Michele identify specific instances in this case whether the ALJ improperly applied the legal standards. Rather, Michele asks this court to re-evaluate her subjective allegations and come to a different conclusion from that of the ALJ. That is not the standard of a social security appeal.

Under the regulations implementing the Social Security Act, an ALJ follows a two-step analysis when considering a claimant's subjective statements about impairments and symptoms. SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017); 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c). First, the ALJ looks for objective medical evidence showing a condition that could reasonably produce the alleged symptoms, such as pain. Id. at *3, §§ 404.1529(b), 416.929(b). Second, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to work. Id. §§ 404.1529(c), 416.929(c). At this step, objective evidence is not required to find the claimant disabled. Thus, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." Id. (emphasis added).

A reviewing court gives great weight to the ALJ's assessment of a claimant's statements and should not interfere with that assessment where the evidence in the record supports the

ALJ's conclusions.  See Shively v. Heckler, 739 F.2d 987, 989–90 (4th Cir. 1984).  Further, a

reviewing court will defer to the ALJ's credibility finding except in those "exceptional" cases

where the determination is unclear, unreasonable, contradicts other findings of fact, or is based

on an inadequate reason or no reason at all.  See Bishop v. Comm'r of Soc. Sec., 583 Fed. Appx.

65, 68 (D. Md. May 4, 2016) (citing Edeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997)).

Substantial evidence supports the ALJ's determinations regarding Michele's allegations.

The ALJ reviewed Michele's testimony in detail, along with the evidence of record. The ALJ

found that Michele's statements concerning the intensity, persistence and limiting effects of her

symptoms were not entirely consistent with the medical evidence and other evidence in the

record. R. 27.   The ALJ outlined her reasons for this determination in detail and her reasoning is

examined above. R. 27–29. The ALJ supported her conclusions through discussion and analysis

of the evidence, and gave several reasons, supported by substantial evidence, for finding that

despite Michele's pain and physical limitations, she could perform a limited range of light work.

Accordingly, I find that the ALJ's decision is supported by substantial evidence.  See Ladda v.

Berryhill, 749 Fed. Appx. 166 (4th Cir. Oct. 18, 2018) (upholding the ALJ's credibility

determination because the ALJ explained his reasoning and weighed the claimant's subjective

statements against other evidence.)

## CONCLUSION

For the foregoing reasons, I **RECOMMEND** that an order be entered **AFFIRMING** the

final decision of the Commissioner, **DENYING** Michele's motion for summary judgment,

**GRANTING** the Commissioner's motion for summary judgment, and **DISMISSING** this case

from the Court's docket.

The Clerk is directed to transmit the record in this case to Michael F. Urbanski, United

States District Judge, and to provide copies of this Report and Recommendation to counsel of record.  Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof.  Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties.  Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including the waiver of the right to appeal.

Entered: December 6, 2021

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge