CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 03 2022

JULIA C. DUDLEY, CLERK
BY: /s/ Siagle
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

|  |  |
|---|---|
| MICHELE L., | ) |
| | ) |
| Plaintiff | ) Civil Action No. 7:20-CV-388 |
| | ) |
| v. | ) |
| | ) |
| KILOLO KIJAKAZI, Acting Commissioner | ) |
| of Social Security, | ) By: Michael F. Urbanski |
| | ) Chief United States District Judge |
| | ) |
| Defendant | ) |

## MEMORANDUM OPINION

This social security disability appeal was referred to the Honorable Robert S. Ballou, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for proposed findings of fact and a recommended disposition. The magistrate judge filed a report and recommendation (R&R) on December 6, 2021, recommending that plaintiff's motion for summary judgment be denied, the Commissioner's motion for summary judgment be granted, and the Commissioner's final decision be affirmed. Plaintiff Michele L. (Michele) has filed objections to the R&R and this matter is now ripe for the court's consideration.

### I. Background

Michele filed an application for disability insurance benefits and supplemental security income on June 1, 2017, alleging disability beginning on June 30, 2016. Michele was 44 years old at the alleged onset date and her "date last insured" (DLI) was September 30, 2019. She seeks disability based on depression, insomnia, fibromyalgia, asthma, "bad ankle," recovering drug addiction, post-traumatic stress disorder, anxiety, pain, and bipolar disorder. R. 288.

The ALJ found that Michele had severe impairments of hepatitis C, lumbar degenerative disc disease and sciatica, cervical degenerative disc disease, opiate addiction, depression, anxiety, post-traumatic stress disorder, and borderline personality disorder, but that none of her impairments met or medically equaled a listed impairment. The ALJ further found that Michele's fibromyalgia was not a medically determinable impairment and that in any event, it would be accommodated by the residual functional capacity assessment (RFC). The ALJ also found that Michele's problems with her ankles and asthma were not severe impairments. R. 18-21.

The ALJ found that Michele had the RFC to perform light work with the additional limitations of only occasionally climbing ramps and stairs, balancing, kneeling, stooping, and crouching, never crawling, and only frequently reaching overhead. Michele would need to avoid concentrated exposure to extreme temperatures and would need to avoid all exposures to hazardous machinery, working at unprotected heights, climbing ladders, ropes, and scaffolds, and working on vibrating surfaces. Michele could understand, remember, and carry out simple instructions in repetitive, unskilled work, could attend, persist, and concentrate for two-hour segments with normal breaks as allowed by the employer, and could complete an eight-hour workday and forty-hour workweek in work that involved no interactions with the general public and occasional interactions with coworkers and supervisors, although she was able to respond appropriately to supervision, coworkers, and usual work situations. R. 22.

Based on this RFC, the ALJ determined that Michele could not return to her past relevant work as an office manager and tanning salon attendant. However, the ALJ found,

2

based on the testimony of a vocational expert, that Michele could do the jobs of mail room clerk, clothing bagger, and router, and that such jobs existed in significant numbers in the national economy. Therefore, the ALJ concluded that Michele was not disabled. R. 29-30. The Appeals Council denied Michele's request for review, R. 1-3, making the ALJ decision the final decision of the Commissioner.

This lawsuit followed. The magistrate judge found that the ALJ determination was supported by substantial evidence and Michele objects to several of the magistrate judge's conclusions. ECF No. 25. The commissioner responded to her objections. ECF No. 26.

## II. Standard of Review of Magistrate Judge Decision

The objection requirement set forth in Rule 72(b) of the Federal Rules of Civil Procedure[1] is designed to "train[ ] the attention of both the district court and the court of appeals upon only those issues that remain in dispute after the magistrate judge has made findings and recommendations." United States v. Midgette, 478 F.3d 616, 621 (4th Cir. 2007) (citing Thomas v. Arn, 474 U.S. 140, 147–48 (1985)). An objecting party must do so "with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." Id. at 622.

> To conclude otherwise would defeat the purpose of requiring objections. We would be permitting a party to appeal any issue that was before the magistrate judge, regardless of the nature and scope of objections made to the magistrate judge's report. Either the district court would then have to review every issue in the magistrate judge's proposed findings and recommendations or courts of appeals would be required to review issues that the district court never considered. In either case, judicial resources would be wasted and the district court's effectiveness based on help from magistrate judges would be undermined.

---

[1] "Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b).

3

Id.

The district court must determine de novo any portion of the magistrate judge's report and recommendation to which a proper objection has been made. "The district court may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1).

If, however, a party "'makes general or conclusory objections that do not direct the court to a specific error in the magistrate judge's proposed findings and recommendations,'" de novo review is not required. Diprospero v. Colvin, No. 5:13-cv-00088-FDW-DSC, 2014 WL 1669806, at *1 (W.D.N.C. 2014) (quoting Howard Yellow Cabs, Inc. v. United States, 987 F. Supp. 469, 474 (W.D.N.C. 1997) and Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982)). "The district court is required to review de novo only those portions of the report to which specific objections have been made." Roach v. Gates, 417 F. App'x 313, 314 (4th Cir. 2011). See also Camper v. Comm'r of Soc. Sec., No. 4:08cv69, 2009 WL 9044111, at *2 (E.D. Va. 2009), aff'd, 373 F. App'x 346 (4th Cir.) ("The court will not consider those objections by the plaintiff that are merely conclusory or attempt to object to the entirety of the Report, without focusing the court's attention on specific errors therein."); Midgette, 478 F.3d at 621 ("Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized, as the statute directs the district court to review only 'those portions of the report or specified proposed findings or recommendations to which objection is made.'") (emphasis in original). Such general objections "have the same effect as a failure to

4

object, or as a waiver of such objection." Moon v. BWX Technologies, 742 F. Supp. 2d 827, 829 (W.D. Va. 2010), aff'd, 498 F. App'x 268 (4th Cir. 2012). See also Arn, 474 U.S. at 154 ("[T]he statute does not require the judge to review an issue de novo if no objections are filed. . . .").

Rehashing arguments raised before the magistrate judge does not comply with the requirement set forth in the Federal Rules of Civil Procedure to file specific objections. Indeed, objections that simply reiterate arguments raised before the magistrate judge are considered to be general objections to the entirety of the report and recommendation. See Veney v. Astrue, 539 F. Supp. 2d 841, 844-45 (W.D. Va. 2008). As the court noted in Veney:

> Allowing a litigant to obtain de novo review of her entire case by merely reformatting an earlier brief as an objection "mak[es] the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act." Howard [v. Sec'y of Health & Human Servs.], 932 F.2d [505,] [] 509 [(6th Cir. 1991)].

Veney, 539 F. Supp. 2d at 846. A plaintiff who reiterates her previously-raised arguments will not be given "the second bite at the apple she seeks;" instead, her re-filed brief will be treated as a general objection, which has the same effect as would a failure to object. Id.

### III. Judicial Review of Social Security Determinations

It is not the province of a federal court to make administrative disability decisions. Rather, judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to meet his burden of proving disability. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In so doing, the court may neither undertake a

de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996).

Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401; Laws, 368 F.2d at 642. "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

## IV. Plaintiff's Objections[2]

Michele objects to the following findings by the magistrate judge: (1) Substantial evidence supports the ALJ's findings on Michele's mental RFC; (2) Substantial evidence supports the ALJ's physical RFC; (3) The ALJ properly considered Michele's subjective allegations.

### A. Mental RFC

The mental RFC assessment is discussed in Social Security Ruling 96-8p, which provides that when determining whether a claimant has a severe mental impairment at Step 2

---

[2] Detailed facts about Michele's impairments and medical and procedural history can be found in the report and recommendation (ECF No. 24) and in the administrative transcript (ECF No. 9) and will not be repeated here except as necessary to address her objections.

6

of the sequential evaluation,[3] or meets a listing for a mental impairment at Step 3 of the sequential evaluation, the adjudicator assesses an individual's limitations and restrictions from a mental impairment in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. The mental disorders listings are set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. However, the limitations identified in the listing criteria are not an RFC assessment, and the mental RFC assessment used at Steps 4 and 5 of the sequential evaluation process requires a more detailed assessment "by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings." Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8p, 1996 WL 374184 at *4 (S.S.A. July 2, 1996).

In assessing the RFC, the adjudicator should consider the claimant's medical history, medical signs, and laboratory findings, the effects of treatment, reported daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms that are reasonably attributed to a medically determinable impairment, evidence from attempts to

---

[3] In conducting the sequential evaluation, the ALJ makes a series of determinations: (1) Whether the claimant is engaged in substantial gainful activity; (2) Whether the claimant has a medically determinable impairment that is "severe" under the regulations; (3) Whether the severe impairment or combination of impairments meets or medically equals the criteria of a listed impairment; (4) Whether the claimant has the RFC to perform his past relevant work; and (5) Whether the claimant is able to do any other work in the national economy, considering his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a) and 416.920(a). If the ALJ finds that the claimant has been engaged in substantial gainful activity at Step 1 or finds that the impairments are not severe at Step 2, the process ends with a finding of "not disabled." Mascio v. Colvin, 780 F.3d 632, 634-635 (4th Cir. 2015). At Step 3, if the ALJ finds that the claimant's impairments meet or equal a listed impairment, the claimant will be found disabled. Id. at 635. If the analysis proceeds to Step 4 and the ALJ determines the claimant's RFC will allow him to return to his past relevant work, the claimant will be found "not disabled." If the claimant cannot return to his past relevant work, the ALJ then determines, often based on testimony from a vocational expert, whether other work exists for the claimant in the national economy. Id. The claimant bears the burden of proof on the first four steps and the burden shifts to the Commissioner on the fifth step. Id.

work, need for a structured environment, and work evaluations, if available. Id., SSR 96-8p, 1996 WL 374184 at *5. The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and non-medical evidence. Id., SSR 96-8P, 1996 WL 374184 at *7.

When evaluating a claimant's reported symptoms, the ALJ first considers whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the individual's symptoms. Once an underlying physical or mental impairment is established, the ALJ evaluates the intensity and persistence of symptoms to determine the extent to which the symptoms limit a claimant's ability to perform work-related activities. Social Security Ruling 16-3P Titles II and XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P, 2017 WL 5180304 (S.S.A. Oct. 25, 2017). In making the second determination, the ALJ first looks at the objective medical evidence. Id., SSR 16-3P, 2017 WL 5180304, at *5. If the ALJ cannot make a disability determination that is fully favorable based on objective medical evidence, other evidence, such as statements from the claimant, medical sources and other sources are considered. Id. 2017 WL 5180304, at *6.

The ALJ considers a claimant's statement about symptoms, and any description by medical sources or nonmedical sources about how the symptoms affect activities of daily living and the ability to work. However, statements about symptoms alone will not establish disability. 20 C.F.R. § 404.1529(a).

> In evaluating the intensity and persistence of your symptoms, including pain, we will consider all of the available evidence, including your medical history, the medical signs and laboratory findings, and statements about how your symptoms affect you. We will then determine the extent to which your alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the medical signs and laboratory

8

>findings and other evidence to decide how your symptoms affect your ability to work.

Id.

Michele argued to the magistrate judge and objects here that the ALJ's mental RFC is not supported by substantial evidence. She argues that the ALJ failed to consider her moderate mental impairments in assessing the RFC. However, a review of the record shows that the ALJ adequately considered the impairments and her assessment is supported by substantial evidence.

When the ALJ did the assessment at Step 3 to determine if any of Michele's impairments met or equaled a listed impairment, the ALJ determined that Michele had a mild limitation in her ability to understand, remember, or apply information, and a moderate limitation in the areas of interacting with others; concentrating, persisting, or maintaining pace; and adapting and managing herself. A "moderate limitation" means that a person has a fair ability to function in the area independently, appropriately, and effectively on a sustained basis. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(F)(2)(c).

Regarding her ability to interact with others, the ALJ noted Michele's report of personality changes and anger issues, but that she also reported getting along well with co-workers in her past jobs. She was living with a friend and visited other friends monthly. Providers did not generally note difficulty interacting with her. Although she had an arrest for domestic violence, she did not serve time in jail and the record did not indicate violence generally. While she had social anxiety in large groups, she was able to shop at night. R. 21.

Regarding her ability to concentrate, persist, and maintain pace, the ALJ noted that Michele took Xanax for panic issues, but did not generally complain of panic issues. She did

9

not visit mental health care providers and a consultative examiner she saw did not note problems with concentration, persistence, or pace with simple work. She reported no hallucinations, delusions, or suicidal ideations. R. 21.

When the ALJ assessed Michele's mental RFC at Step 4 she summarized Michele's testimony at the hearing and reviewed the medical evidence in the record and the opinions of the state agency psychological consultants. R. 22-29. The ALJ noted Michele's testimony that she resigned from her last job after she and her employer agreed that she could no longer do the work. Michele testified that she could not concentrate like she used to, and that she would lose her train of thought when people went into the tanning salon. She also testified that she had difficulties with concentration when working as an office manager. Michele also testified that she had "bad anxiety" and "different personalities." She testified that she does not like to be around people because of her nervousness and she feels like people are staring at her.

The ALJ noted Michele's May 16, 2016, request to her doctor, which he denied, that she be prescribed three Xanax per day because she was very stressed in her job working part-time with the public. At an emergency room visit to receive treatment for cellulitis which was the result of intravenous drug use, Michele was advised to establish treatment with a provider for her depression and bipolar disorder. In December 2016, uncontrolled depression was listed as one of her problems. R. 24, 831. In August 2017, she reported feelings of mania at times, particularly since coming off opiates. R. 24.

The ALJ also cited to the findings of a consultative examiner that Michele would be able to perform simple and repetitive work and maintain regular attendance. She would not need special or additional supervision and could complete a normal workday or workweek

10

without interruption from her psychiatric condition. She could interact with a small number of co-workers but not with the public. The consultative examiner found Michele had no impairment in concentration, persistence, or pace when attempting simple and repetitive work tasks. R. 25, 734-35.

The ALJ found that while Michele complained of mania at times, the record did not show reports of manic episodes. Also, while she reported quick changes in personality and the consultative examiner noted a mood shift while he was talking to her, providers did not generally note difficulty interacting with her and the record did not show behavior problems. The ALJ accommodated Michele's mood issues by limiting her to occasional interaction with co-workers and no interaction with the public. R. 28. Similarly, the limitations would accommodate her reported anxiety of being around large groups of people in open areas and working with the public. The ALJ noted that Michele reported concentration problems, "but the record does not generally show complaints or findings of concentration difficulties." Id. Also, because Michele did not seek counseling or mental health treatment, the ALJ concluded that her mental health issues were not intense. Id.

Michele objects that the ALJ did not explain why limiting her to occasional interaction with coworkers and no interaction with the public accommodates her mood issues. The court notes that by definition of the term "moderate impairment," Michele has a fair ability to interact with others independently, appropriately, and effectively on a sustained basis. 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00(F)(2)(c).

After setting forth the evidence described above, the ALJ explained the following:

> She complained of mania at times, but the record does not show particular reports of manic episodes such as spending sprees. She indicated quick changes

11

> in personality, and the claimant did shift from a euthymic mood to anxiety in the consultative examination. However, providers did not generally note difficulty interacting with her, and the record does not show behavior problems. The limitation of occasional interaction with coworkers and no interaction with the public accommodates her mood issues.
>
> She reported anxiety with large groups of people in open areas, but the limitation on no public interaction accommodates this. The claimant had anxiety and depression disorders. Her depression did not result in suicidal ideations or much crying and the evidence does not indicate intense withdrawal issues. She had depression from the loss of her mother and her son leaving home, and this does not suggest that work would worsen the depression.
>
> She had some anxiety. She indicated increased anxiety working with the public, and the residual functional capacity accommodates this.

R. 28. This explanation is sufficient because it is clear to a reviewing court how and why the ALJ arrived at the RFC limitation, i.e., because the record shows that Michele has difficulties interacting with the public, the ALJ limited her to no interaction with the public and to only occasional interactions with coworkers and supervisors.

Michele also objects that the ALJ ignored the consultative examiner's opinion that she could only work with a small number of coworkers. However, the ALJ noted the consultative examiner's report, R. 25, and incorporated that finding into the RFC by limiting Michele to only occasional interaction with supervisors and coworkers. Similarly, the ALJ relied on the consultative examiner's opinion that Michele had no impairment in concentration, persistence, or pace to find that the limitations to simple social interaction limitations would accommodate her difficulty in managing herself as well as the concentration issues she described. The ALJ adequately explained how, based on the evidence in the record, she arrived at the mental RFC.

For these reasons, the court agrees with the magistrate judge that substantial evidence supports the ALJ's analysis of Michele's mental impairments. Michele's objection to this finding is **OVERRULED**.

**B. Physical RFC**

Michele argues that substantial evidence does not support the ALJ's assessment of her physical RFC. She asserts that the ALJ failed to perform a function-by-function analysis, failed to explain how the RFC accommodates her physical limitations, did not include limitations related to her hepatitis C in the RFC findings, and did not address her sciatica.

As discussed above, the process for assessing a claimant's RFC is set forth in SSR 96-8P, 1996 WL 374184. The ruling sets out in relevant part the following:

> The RFC must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 CFR 404.1545 and 416.945. Only after that may the RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

Id. at *1. Physical abilities set out in 20 C.F.R. 404.1545(b) and 416.945(b) include sitting, standing, walking, lifting, carrying, pushing, pulling, reaching, handling, stooping, and crouching. Other abilities set out in paragraph (d) of the regulation include those affected by skin impairments or epilepsy, impairment of vision, hearing, or other senses, or impairments which impose environmental restrictions.

The RFC analysis must include a narrative discussion describing how the evidence supports each conclusion. The ALJ must cite specific medical facts such as lab results and nonmedical evidence such as daily activities and observations of the claimant. The ALJ must discuss the claimant's ability to perform sustained work activities in an ordinary work setting

13

on a regular and continuing basis and describe the maximum amount of each work-related activity the claimant can perform based on the evidence in the case record. The ALJ also must explain how he considered and resolved any material inconsistencies or ambiguities in the record. SSR 96-8P, 1996 WL 374184 at *7.

The ALJ determined that Michele can do light work with additional limitations.[4] Michele argued to the magistrate judge that the ALJ failed to conduct a function-by-function analysis, but the magistrate judge found that the ALJ performed the required analysis and appropriately considered her impairments. See Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (quoting Cihocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam) (rejecting per se rule that failure to conduct a function-by-function assessment requires remand and agreeing with the Second Circuit "that remand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record or where other inadequacies in the record frustrate meaningful review.") The court agrees with the magistrate judge's assessment that the ALJ provided the required analysis and that her RFC is supported by substantial evidence.

The ALJ described the evidence related to Michele's back pain and noted her subjective complaints. Despite evidence of an annulus tear at L4/5 in 2014, physical examinations during

---

[4] The regulations define "light work" as follows:
Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. § 404.1567.

the period were mild--showing some tenderness--or normal. No health care provider recommended a spine specialist and Michele had normal strength in her lower extremities. She complained of chronic back pain in 2016 and 2017, but did not complain of limitations in walking, standing, or sitting. She did not list back pain as an issue in her initial disability report. The ALJ noted that she had a limping gait on a visit to a health care provider on August 23, 2018. R. 26, 816. Her upper extremities were normal on examination. She had a reduced ability to lift and carry because of her spine issues, but the record did not indicate great ambulation issues. R. 27. The ALJ found that work at the light exertional level would accommodate her lifting and carrying issues.

Michele objects that the ALJ ignored evidence of her limping gait, but this is incorrect as the ALJ cited to the evidence. Michele also objects that the ALJ ignored evidence of her sciatica and other "lower extremity limitations," but she does not identify the limitations. The ALJ appears to have discussed the evidence in the record that relates to Michele's lower extremity issues and does not appear to have ignored any relevant evidence.

Michele argues that the ALJ did not properly explain how limiting her to light activity accommodated her hepatitis C. But the ALJ stated that the record did not show particular complaints from the hepatitis C. And while she received medication that a provider stated could cause fatigue, she did not generally complain of fatigue and the restriction to light work would accommodate any fatigue she experienced. R. 27. Michele points out, correctly, that the ALJ did not restrict her from working in a restaurant because of the hepatitis C. However, it is unclear how this error affected the ultimate disability determination because the vocational expert did not testify that Michele could do restaurant work and the ALJ made no such finding.

An error is harmless if does not affect the ultimate disability determination. Tanner v. Comm'r of Soc. Sec., 602 F. App'x 95, 101 (4th Cir. 2015); Andrade v. Berryhill, No. 3:18-cv-00112-FDW, 2018 WL 6027822, at *7 (W.D.N.C. Nov. 16, 2018); Blevins v. Colvin, No. 5:15-cv-14240, 2016 WL 6987168 at *17 (S.D.W.V. Sept. 16, 2016). The court finds that any error by the ALJ regarding Michele's ability to work in a restaurant was harmless and does not require remand.

Based on the foregoing, the court finds that substantial evidence supports the ALJ's physical RFC assessment. Michele's objection to the magistrate judge's conclusion on this issue is **OVERRULED**.

### C. Subjective Allegations

Michele objects to the magistrate judge's finding that her argument that the ALJ did not properly consider her subjective allegations was a request that the court re-evaluate the evidence. She claims that in her brief before the magistrate judge she detailed the evidence that directly disputes and contradicts the findings by the ALJ. She further claims that she described evidence showing subjective complaints that the ALJ ignored. Michele does not describe the evidence she believes supports her claim but asks this court to review the arguments she made in her brief before the magistrate. These are general and conclusory objections and will not be considered by the court. Roach, 417 F. App'x at 314; Veney 539 F. Supp. 2d at 844-45.

Michele also reiterates her argument that the ALJ did not address the consultative examiner's opinion that she be limited to working with a small number of co-workers. This argument was addressed above where it was noted that the ALJ acknowledged the consultative

16

examiner's report and incorporated the finding into the RFC by limiting Michele to only occasional interaction with supervisors and coworkers.

For these reasons, Michele's objections to the finding by the magistrate judge that the ALJ properly assessed her subjective allegations are **OVERRULED**.

## V. Conclusion

For the reasons stated, the court finds no error in the magistrate judge's conclusion that the ALJ decision is supported by substantial evidence. Therefore, the magistrate judge's report and recommendation will be adopted in its entirety.

An appropriate Order will be entered.

It is so **ORDERED**.

Entered: February 3, 2022

Michael F. Urbanski
Chief United States District Judge